# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC.,<br><br>                            Plaintiff,<br><br>  vs.<br><br>LAWRENCE PRIJOLES, individually and d/b/a Christy's Bakery & Restaurant,<br><br>                            Defendant. | CASE NO. 11-cv-2619 - IEG (DHB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT**<br><br>[Doc. No. 10] |

Presently before the Court is Plaintiff J & J Sports Productions, Inc. ("Plaintiff")'s motion for default judgment. [Doc. No. 10.] After a thorough review of all the submissions, and for the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for default judgment.

## BACKGROUND

Plaintiff is a commercial distributor of sports and entertainment programming. [Doc. No. 1, Compl. ¶ 11.] Pursuant to contract, Plaintiff was granted the exclusive nationwide commercial distribution (closed-circuit) rights to *"Tactical Warfare": Manny Pacquiao v. Antonio Margarito, WBC Light Middleweight Championship Fight Program* ("the Program"), which was telecast nationwide on Saturday, November 13, 2010. [Id. ¶ 9.] Plaintiff thereafter entered into sublicensing agreements with various commercial entities throughout the United States, wherein Plaintiff granted these entities limited sublicensing rights, specifically the right to publicly exhibit the Program within their respective commercial establishments. [Id. ¶ 10.]

1    Defendant Lawrence Prijoles ("Defendant") is the owner and operator of a commercial
2 establishment doing business as Cristy's Bakery and Restaurant, operating at 9178 Mira Mesa
3 Blvd., San Diego, CA 92126.  [Compl. ¶ 7.]  Plaintiff alleges that Defendant unlawfully
4 intercepted, received, published, divulged, displayed, and exhibited the Program at the time of its
5 transmission at Christy's Bakery and Restaurant.  [Id. ¶ 12; see also Doc. No. 10-3, Declaration of
6 Paul B. Marino ("Marino Decl.").]  Plaintiff further alleges that these actions were done willfully,
7 for the purposes of commercial advantage and private financial gain, and with full knowledge that
8 the Program was not to be unlawfully intercepted, received, published, divulged, displayed, and/or
9 exhibited by commercial entities unauthorized to do so.  [Compl. ¶¶ 12-13.]
10   On November 10, 2011, Plaintiff filed the present action against the Defendant alleging
11 four causes of action for: (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; (3)
12 conversion; and (4) violation of California Business and Professions Code §§ 17200, *et seq*.
13 [Compl.]  Plaintiff served Defendant with the complaint via substituted service on January 13,
14 2012. [Doc. Nos. 4.]  After the Defendant failed to respond to Plaintiff's complaint, Plaintiff
15 requested an entry of default, and the Clerk entered default as to Defendant on March 16, 2012.
16 [Doc. Nos. 5-6.]  By the present motion, Plaintiff requests a default judgment against Defendant
17 and an award of $112,200 in statutory and compensatory damages.  [Doc. No. 10.]

**DISCUSSION**

**I.    Legal Standard for a Default Judgment**

Once a default has been entered by the clerk, the district court has discretion to grant a default judgment.  Fed. R. Civ. P. 55(b)(2); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its discretion to grant or deny relief, the district court should consider:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted).  In deciding a motion for default judgment, the well pleaded factual allegations of the complaint, other than damages, are taken as true.  Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002); Televideo Sys.,

Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir.1987); see also FED. R. CIV. P. 8(b)(6) ("[a]n allegation-other than one relating to the amount of damages-is admitted if a responsive pleading is required and the allegation is not denied").

## II. Merits and Sufficiency of the Complaint

### A. Plaintiff's § 605 Claim

Plaintiff brings a claim for violation of 47 U.S.C. § 605 of the Communications Act. [Compl. ¶¶ 8-17.] "The Federal Communications Act of 1934, 47 U.S.C. § 605 *et seq.* prohibits commercial establishments from intercepting and broadcasting satellite cable programming without a license." J&J Sports Prods. v. Miranda, 2009 U.S. Dist. LEXIS 112415, at *2 (N.D. Cal. 16, 2009). To establish a violation of § 605, the plaintiff must show that defendant (1) "intercepted" and (2) "divulged or published . . . a communication transmitted by the plaintiff." Nat'l Subscription Television v. S & H TV, 644 F.2d 820, 826 (9th Cir. 1981).

The Act provides a private right of action to persons "aggrieved" by violations of the Act. 47 U.S.C. § 605(e)(3)(A). A "person aggrieved" includes a party "with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." Id. § 605(d)(6).

Accepting the allegations in the complaint as true, Plaintiff has established a cause of action for violation of § 605. Plaintiff alleges Defendant unlawfully intercepted, received, published, divulged, displayed, and exhibited the Program at the time of its transmission. [Compl. ¶ 12.] These allegations are sufficient to establish a violation of § 605.[1] See S & H TV, 644 F.2d at 826. Plaintiff also alleges it was granted the exclusive nationwide commercial distribution (closed-circuit) rights to the Program. [Compl. ¶ 9.] Therefore, Plaintiff is an "aggrieved party"

---

[1] § 605 applies only to intercepted "radio" communications or broadcasts through the air, such as satellite broadcasts. J & J Sports Prods., Inc. v. Doan, 2008 U.S. Dist. LEXIS 95137, at *7 (N.D. Cal. Nov. 13, 2008) (citing United States v. Norris, 88 F.3d 462, 469 (7th Cir. 1996)). Because Defendant defaulted, Plaintiff admits it cannot determine what type of signal transmission–satellite or cable–was used, but asks for recovery under 47 U.S.C. § 605. [Doc. No. 10-1 at 8.] As at least one district court has noted, any uncertainty as to whether Defendant in fact violated § 605 by intercepting a satellite transmission is immaterial in light of the fact that a statutory award in the same amount would be equally appropriate in the event Defendant instead violated 47 U.S.C. § 553, which prohibits the unauthorized interception of cable programming. J&J Sports Prods. v. Seldner, 2012 U.S. Dist. LEXIS 104400, at *7 (N.D. Cal. Jul. 26, 2012).

and has a private cause of action under § 605 against Defendant. See 47 U.S.C. § 605(d)(6), (e)(3)(A).

### B. Plaintiff's Conversion Claim

Plaintiff brings a cause of action for the common law tort of conversion. [Compl. ¶¶ 23-26.] Under California law, the elements of a cause of action for conversion are: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1066 (1998).

Accepting the allegations in the complaint as true, Plaintiff has established a cause of action for conversion. Plaintiff alleges it was the owner of distribution rights to the Program. [Compl. ¶ 9.] Plaintiff also alleges Defendant unlawfully intercepted, received, published, divulged, displayed, and exhibited the Program without Plaintiff's authorization. [Id. ¶¶ 12, 24] Finally, Plaintiff alleges Defendant's acts deprived Plaintiff of the commercial license fee to which Plaintiff was rightfully entitled to receive. [Id. ¶ 25.]

### C. Plaintiff's Remaining Claims

Plaintiff also brings a claim for violation of 47 U.S.C. § 553 and a claim for violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq*. [Compl. ¶¶ 18-22, 27-36.] However, Plaintiff is not seeking relief for these claims. [See Doc. No. 10.] Plaintiff only requests relief based on its conversion claim and its claim for violation of 47 U.S.C. § 605. [See id.] Accordingly, the Court declines to address the merits of these claims.

## III. Remaining Eitel Factors

The remaining Eitel factors favor default judgment as well. Plaintiff will be prejudiced if default judgment is not entered because, if the Court denies the motion, Plaintiff will be without other recourse for recovery and will unable to enforce its rights. See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). There is no genuine dispute of the facts because the well-pleaded allegations in complaint are taken as true. See id. There is nothing before the Court that would suggest the lack of response from the Defendant was the result of

excusable neglect; Defendant was properly served with the complaint and summons. [See Doc. No. 4.] Although Plaintiff requests a fairly large sum of money, $112,200 in damages, [Doc. No. 10 at 3], as will be explained below, Plaintiff is actually entitled to a far smaller amount of damages, $3,000. In addition, the discretionary nature of statutory damages favors the entry of default judgment. See Elektra Entm't Group, Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005). And finally, although policy prefers adjudication on the merits, a defendant's failure to appear renders that option unavailable. See Pepsico, Inc., 238 F. Supp. 2d at 1177. Accordingly, the remaining Eitel factors all favor granting default judgment.

**IV.   Relief Sought**

Plaintiff seeks $110,000 in statutory and enhanced damages for its § 605 claim and $2,200 in compensatory damages for its conversion claim. [Doc. No. 10 at 3; Doc. No. 10-1 at 11-20] In a default judgment, the judgment cannot differ in kind or exceed in amount the relief requested in the pleadings. FED. R. CIV. P. 54(c). The demand for relief must be specific. FED. R. CIV. P. 8(a)(3).

     A.   Statutory Damages for § 605 Claim

Plaintiff requests $10,000 in statutory damages for his § 605 claim. [Doc. No. 10-1 at 11-14.] Under section 605(e)(3)(C), an aggrieved party may recover actual damages suffered or an award of statutory damages for each violation of § 605(a). 47 U.S.C. § 605(e)(3)(C). Here, Plaintiff has elected to receive statutory damages. Section 605(e)(3)(C) provides that these statutory damages cannot be less than $1,000 and cannot exceed $10,000. 47 U.S.C. § 605(e)(3)(C)(i)(II). Further, the amount of the statutory award should be determined "as the court considers just." Id.

> Courts typically consider the following factors in determining whether maximum statutory damages are appropriate: repeated violations; substantial unlawfully monetary gains; cover charges to enter the establishment; significant actual damages to the plaintiff; the number of televisions on which the broadcast was displayed; promotional advertising for the broadcast; and whether the defendant charged a premium on food or drinks during the broadcast.

G&G Closed Circuit Events, LLC v. Nguyen, 2012 U.S. Dist. LEXIS 99137, at *9-10 (N.D. Cal. May 30, 2012).

There is no evidence that the Defendant is a repeat offender, charged premiums on food or drinks, advertised for the event, or obtained substantial monetary gains. Plaintiff has produced a declaration stating that the Program was shown on one 55-inch television to between 20 to 22 patrons, and Defendant did not charge a cover. [Doc. No. 10-3, Marino Decl. at 1-2.] Based on this evidence, the Court finds an award of $3,000 in statutory damages to be appropriate. See, e.g., Nguyen, 2012 U.S. Dist. LEXIS 99137, at *10 (awarding $1,000 in statutory damages where no aggravating factors were present); J&J Sports Prods. v. Basto, 2011 U.S. Dist. LEXIS 16824, at *5 (N.D. Cal. Feb. 14, 2011) (awarding $3,000 in statutory damages where no aggravating factors were present).

### B.  Enhanced Damages for § 605 Claim

Plaintiff also requests $100,000 in enhanced damages for his § 605 claim. [Doc. No. 10-1 at 14-19.] 47 U.S.C. § 605(e)(3)(C)(ii) provides that when a court finds that an act was committed willfully and for financial gain, "the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000." In considering a motion for default judgment, the "mere assertion that [the defendant] acted willfully is insufficient to justify enhanced damages." Kingvision Pay-Per-View, Ltd. v. Backman, 102 F. Supp. 2d 1196, 1198 (N.D. Cal. 2000). "Further, without a showing that the defendant is a repeat offender or that the defendant substantially profited by charging a cover charge, inflating prices or advertising, enhanced damages are not justified." Nguyen, 2012 U.S. Dist. LEXIS 99137, at *11.

Here, although the program was broadcast in a commercial setting, Plaintiff has failed to produce evidence showing that it was done for significant private financial gain. According to the declaration submitted by Plaintiff, there was only between 20 and 22 patrons in Defendant's establishment at the time of the transmission. [Doc. No. 10-3, Marino Decl. at 2.] In addition, the declaration states that Defendant did not charge a cover and only displayed the Program on one television. [Id. at 1.] Also, there is no evidence that the Defendant is a repeat offender, charged inflated prices, or advertised for the event. Therefore, based on this evidence, Plaintiff has failed to show that it is entitled to enhanced damages. See Nguyen, 2012 U.S. Dist. LEXIS 99137, at *10-11; Backman, 102 F. Supp. 2d at 1198-99. Accordingly, the Court declines to award Plaintiff

enhanced damages under § 605(e)(3)(C)(ii).

### C. Compensatory Damages for Conversion Claim

Plaintiff requests $2,200 in damages for its conversion claim. [Doc. No. 10-1 at 20.] Under California Civil Code § 3336, a plaintiff in an action for conversion may recover the value of the property at the time of conversion plus interest. Krueger v. Bank of Am., 145 Cal. App. 3d 204, 215 (1983).

In its motion, Plaintiff argues that it is entitled to $2,200 in damages because that is the amount the Defendant would have been required to pay had he obtained a sublicense to display the Program from Plaintiff. [Doc. No. 10-1 at 20.] However, Plaintiff has presented no evidence showing that the sublicense would have indeed been $2,200. In moving for default judgment, a plaintiff must support its request for damages with evidence. See Garden City Boxing Club, Inc. v. Nguyen, 2005 U.S. Dist. LEXIS 29886, at *4 (N.D. Cal. Nov. 28, 2005) ("allegations regarding the amount of damages must be proven"); see, e.g., Nguyen, 2012 U.S. Dist. LEXIS 99137, at *13-14 (denying the plaintiff's request for conversion damages where the plaintiff provided no evidence of its licensing fees). Accordingly, the Court declines to award Plaintiff $2,200 in damages for its conversion claim.

### CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for default judgment and awards $3,000 in damages in favor of Plaintiff J & J Sports Productions, Inc. and against Defendant Lawrence Prijoles, individually and d/b/a Christy's Bakery & Restaurant.

**IT IS SO ORDERED.**

**DATED:** August 17, 2012

*[signature]*

**IRMA E. GONZALEZ**
**United States District Judge**